IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BRIAN MITCHELL LEE,

      Appellant/
      Cross-Appellee,

v.

STATE OF FLORIDA,

      Appellee/
      Cross-Appellant.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NOS. 1D15-0943 & 1D15-0945

Opinion filed June 1, 2017.

An appeal from the Circuit Court for Escambia County.
Terry D. Terrell, Judge.

Nancy A. Daniels, Public Defender, and A. Victoria Wiggins, Assistant Public Defender, Tallahassee, for Appellant/Cross-Appellee.

Pamela Jo Bondi, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee/Cross-Appellant.

ON MOTION FOR REHEARING EN BANC

ROWE, J.

We grant the State's motion for rehearing en banc, vacate our prior opinion issued on November 28, 2016, and substitute the following opinion:

Brian Mitchell Lee challenges his convictions for (1) traveling to meet a minor to engage in sexual conduct; (2) the unlawful use of a two-way communications

1

device to facilitate the commission of a felony; and (3) using a compsuter to facilitate or solicit the sexual conduct of a child. We affirm as to all issues raised by Lee, but write to address only one. He argues that the decisions in State v. Shelley, 176 So. 3d 914 (Fla. 2015), and Hamilton v. State, 163 So. 3d 1277 (Fla. 1st DCA 2015), compel reversal of two of his convictions on double jeopardy grounds. The State seeks review of the trial court's departure sentence in a separate appeal.[1]

We affirm Lee's convictions for all three offenses because, unlike in Shelley and Hamilton, his multiple convictions were not based on the same conduct. Rather, Lee's convictions arose from separate criminal episodes and distinct criminal acts; thus, they do not violate the prohibition against double jeopardy. But we reverse Lee's sentences and remand for resentencing because the trial court improperly departed downward when imposing the sentences.

## I. Facts & Procedural History

Lee placed an ad in the Casual Encounters section of Craigslist, seeking an encounter with a male "under 25" years old. An investigator presenting himself as "Matt" responded to Lee's ad after he determined the ad could be an effort to initiate contact with a minor. The investigator promptly informed Lee that "Matt" was only fourteen years old. But even after learning that "Matt" was a minor, Lee continued

---

[1] These appeals were consolidated for all purposes, and the State's appeal was treated as a cross-appeal.

2

the communications. Over the course of the next eleven days, the two exchanged multiple emails and Lee proposed that the two engage in various sexual acts. On the twelfth day, Lee asked to meet "Matt" in person. When Lee arrived at the agreed-upon location, he was met by law enforcement and arrested. A search of his truck revealed erectile dysfunction medications.

The State charged Lee by information with three felony offenses: traveling to meet a minor to engage in sexual conduct, unlawful use of a two-way communications device to facilitate the commission of a felony, and using a computer to facilitate or solicit the sexual conduct of a child. Lee moved to dismiss the charges, arguing that counts one and three violated double jeopardy, because the elements of solicitation were subsumed within the offense of traveling to meet a minor. He also argued that counts one and two violated double jeopardy, because the elements of using a two-way communications device were subsumed within the offense of traveling, and that both offenses occurred within a single episode. The trial court denied the motion, and the case proceeded to trial.

Through the testimony of the investigating officer, the State introduced into evidence the entire transcript of the communications between Lee and "Matt." The testimony demonstrated that the communications occurred over the course of twelve days and involved multiple acts of solicitation.

After the State rested, Lee admitted during his testimony that the transcript of communications introduced into evidence was accurate. He asserted that he placed the ad on Craigslist to meet adult males. He declared that he was certain that "Matt" was a police officer from the beginning, but decided to play along because he wanted to "get back" at the police for targeting homosexuals in these types of undercover operations. Dr. Julie Harper, a clinical and forensic psychologist, testified that Lee had a narcissistic and obsessive compulsive personality and that he had previously been diagnosed with depression. She described Lee, a family physician, as highly intelligent with a lot of inner pain and low self-esteem.

The jury returned a guilty verdict on all three counts, and the case proceeded to sentencing. Lee's Criminal Punishment Code scoresheet established a minimum permissible sentence of forty-five months' imprisonment. He filed a sentencing memorandum, requesting a downward departure based on several non-statutory mitigators. At sentencing, Lee presented the testimony of two employees, four former patients, and his brother. Defense counsel argued that the trial court should downwardly depart because Lee never had sexual contact with a minor, he showed great potential for rehabilitation, he maintained a close relationship with his family, and he lacked any history of prior criminal activity. The State specifically argued that none of those factors warranted the imposition of a downward departure sentence and argued against the trial court imposing such a sentence. The State

4

argued that Lee was a danger to the community and that the court should impose a sentence of no less than five years' imprisonment.

Before imposing Lee's sentences, the trial court noted that Lee had virtually no prior criminal record and that it had not been proven that Lee had any inappropriate physical contact with a child. The court observed that it was uncontradicted that Lee was suffering from depression when he committed these crimes. The court also considered that countless patients continued to seek treatment from Lee during the pendency of these charges.

The court departed downward, declining to impose a term of imprisonment, instead sentencing Lee to concurrent terms of two years' community control followed by thirteen years' probation. On the Criminal Punishment Code scoresheet, the trial court specified that the departure sentence was based on the statutory mitigator that Lee required specialized treatment for a mental disorder that was unrelated to substance abuse or addiction. The court further indicated its reliance on the non-statutory mitigators announced at the sentencing hearing. This appeal and cross-appeal follow.

## II. Analysis

We begin our analysis with a discussion of double jeopardy principles, including: (i) which party bears the burden to demonstrate a double jeopardy violation; (ii) the three-step test to be applied to determine whether multiple

5

convictions violate the prohibition against double jeopardy; and (iii) the factors and evidence to be considered when applying the three-step test. Next, we explain why the holdings in <u>Shelley</u> and <u>Hamilton</u> have no application to our double jeopardy analysis in this case. Then, we apply these principles to explain why Lee's multiple convictions do not violate the prohibition against double jeopardy. Finally, we explain why the trial court erred in imposing the downward departure sentence.

### A. *Double Jeopardy Principles*

The Double Jeopardy Clause provides protection from three separate types of double jeopardy. "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." <u>Ohio v. Johnson</u>, 467 U.S. 493, 498 (1984) (quoting <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969)). Here, Lee argues that he received multiple punishments for the same offense; thus our analysis concerns this type of double jeopardy claim.

### i. *Burden to Demonstrate a Double Jeopardy Violation*

The party alleging error bears the burden to demonstrate reversible error on appeal. <u>See</u> <u>Stone v. Stone</u>, 873 So. 2d 628, 630 (Fla. 2d DCA 2004). And when it is a defendant appealing a trial court's ruling, "the defendant bears the burden of demonstrating that an error occurred in the trial court." <u>Jones v. State</u>, 923 So. 2d

6

486, 488 (Fla. 2006) (quoting <u>Goodwin v. State</u>, 751 So. 2d 537, 544 (Fla. 1999)).

A defendant alleging a double jeopardy violation is in no different position; it remains the defendant's burden to establish that a double jeopardy violation has occurred. <u>See</u> <u>Sprouse v. State</u>, 208 So. 3d 785, 787 (Fla. 1st DCA 2016) ("Sprouse has not met his burden of showing his multiple convictions violate double jeopardy."); <u>Edwards v. State</u>, 139 So. 3d 981, 983 (Fla. 1st DCA 2014) ("The burden of proof was Edwards' to demonstrate error in this case."); <u>see also</u> <u>Capron v. State</u>, 948 So. 2d 954, 957 (Fla. 5th DCA 2007) (observing that a defendant bears the burden of proving a double jeopardy violation). And after a jury trial, the burden to demonstrate error is especially heavy as the reviewing court must view "the evidence in the light most favorable to the jury verdict." <u>Williams v. State</u>, 90 So. 3d 931, 933 (Fla. 1st DCA 2012).

*ii. Three-Step Test for Analyzing Double Jeopardy Claims*
*Alleging Multiple Punishments*

A court reviewing a double jeopardy claim alleging multiple punishments must apply a three-step test. <u>State v. Paul</u>, 934 So. 2d 1167, 1172-73 (Fla. 2006). We explained how the test should be applied in <u>Partch v. State</u>, 43 So. 3d 758, 760 (Fla. 1st DCA 2010): First, we must determine whether the convictions "were based on an act or acts which occurred within the same criminal transaction and/or episode." <u>Id.</u> Second, if the convictions arose from the same criminal episode, we "must then determine if the convictions were predicated on distinct acts." <u>Id.</u> Third,

7

"[i]f the charges are not predicated on distinct acts and have occurred within the same criminal episode, we must next decide if the charges survive a same elements test as defined by section 775.021, Florida Statutes [(2013)], commonly referred to as the Blockburger analysis." Id. (citing to Blockburger v. United States, 284 U.S. 299 (1932)). Thus, we only reach the third step of the analysis, the so-called "same elements" test, if the first two questions are answered in the negative. See Graham v. State, 207 So. 3d 135, 141 (Fla. 2016) (clarifying that the same elements test applies when a defendant is convicted under multiple statutes for a single criminal act); Tindal v. State, 145 So. 3d 915, 923-34 (Fla. 4th DCA 2014) (engaging in same elements analysis only after concluding that the offenses occurred during the same criminal episode and that the charges were not based on distinct acts); Sanders v. State, 101 So. 3d 373, 375 (Fla. 1st DCA 2012) (explaining that if the charged offenses occurred in separate episodes or involved distinct acts, no further analysis is required to conclude that the offenses do not violate double jeopardy).

### iii. Factors and Evidence to Consider in Each Step

Each of the three steps of the double jeopardy test requires application of different factors and consideration of specific types of evidence. In the first step, when determining whether the defendant's convictions arose from offenses occurring in one or more criminal episodes, the reviewing court examines "whether there are multiple victims, whether the offenses occurred in multiple locations, and

8

whether there has been a 'temporal break' between offenses." Paul, 934 So. 2d at 1173 (quoting Murray v. State, 890 So. 2d 451, 453 (Fla. 2d DCA 2004)). The existence of a separation in time, place, or circumstance allows the court to ascertain "whether the defendant had time to pause, reflect, and form a new criminal intent between occurrences." Hammel v. State, 934 So. 2d 634, 635 (Fla. 2d DCA 2006) (quoting Eaddy v. State, 789 So. 2d 1093, 1095 (Fla. 4th DCA 2001)). Minimal lapses in time can be sufficient for a defendant to form a new criminal intent between offenses. See White v. State, 924 So. 2d 957, 957-58 (Fla. 4th DCA 2006); Burrows v. State, 649 So. 2d 902, 903 (Fla. 1st DCA 1995) (superseded by statute on other grounds as stated in Jupiter v. State, 833 So. 2d 169 (Fla. 1st DCA 2002)).

When determining whether offenses occurred during the same criminal episode, the reviewing court examines the entire record, including all evidence admitted at trial. See Edwards, 139 So. 3d at 92 (examining the record to determine whether the defendant's convictions arose from a single criminal episode); Sanders, 101 So. 3d at 375 (relying on the record to determine whether appellant's convictions arose from offenses occurring in the same criminal episode); Williams, 90 So. 3d at 933 (relying on the record to determine whether appellant's convictions were based on offenses occurring in a single criminal episode); Nicholson v. State, 757 So. 2d 1227 (Fla. 4th DCA 2000) (holding that the defendant's convictions under identically worded counts of throwing a deadly missile into a dwelling did not

9

violate double jeopardy because the evidence presented at trial clearly distinguished between the two counts).

If, and only if, we determine that multiple offenses occurred during a single criminal episode do we proceed to the second step of the test. This step involves the determination of whether the offenses are based on distinct criminal acts. In assessing whether acts are distinct, the reviewing court examines "whether there was (1) a temporal break between the acts, (2) intervening acts, (3) a change in location between the acts; and/or (4) a new criminal intent formed." Partch, 43 So. 3d at 761 (citing Hayes v. State, 803 So. 2d 695, 700 (Fla. 2001)). The Florida Supreme Court has described a distinct act as:

> "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." Wharton's Criminal Law (11th Ed.) § 34. Or, as stated in note 3 to that section, "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty."

Graham, 207 So. 3d at 139 (quoting Blockburger, 284 U.S. at 302). A similar analysis was applied in R.J.R. v. State, 88 So. 3d 264, 268 (Fla. 1st DCA 2012), when this Court observed, "the State failed to establish that the acts occurred in different locations, that there was any temporal break between the two acts that would have enabled R.J.R. to reflect and form a new criminal intent for the second act, or that there were any intervening acts interrupting R.J.R.'s resisting arrest."

10

Just as was required in the first step of the test, step two requires the examination of the entire record before a court may conclude that multiple acts are distinct for double jeopardy purposes. See Graham, 207 So. 3d at 141 (relying on the record to determine whether the defendant's multiple convictions were based on distinct acts); McCarter v. State, 204 So. 3d 529, 530 (Fla. 1st DCA 2016) (concluding that the record established two distinct acts of solicitation, a request for illicit pictures and a solicitation for a lewd or lascivious molestation, to support appellant's dual convictions for solicitation and traveling). This Court applied the distinct acts test in our decision in Harris v. State, 111 So. 3d 922, 924 (Fla. 1st DCA 2013), and examined the entire record to determine whether the facts reflected "an uninterrupted series of acts, as opposed to distinct acts separated by time, intervening acts, or different locations."

Third, and only after determining that the conduct involved did not arise from separate criminal episodes or distinct acts occurring during a single criminal episode, the reviewing court must apply the third step of the analysis, same elements test. In this step, the court must determine whether each of the charged offenses requires proof of an element that the other does not. § 775.021(4)(a), Fla. Stat. (2013). The general rule is that the Legislature intends to allow punishment for each criminal offense committed during a single criminal episode or transaction. Harris, 111 So. 3d at 924. But three statutory exceptions to that rule must be considered, to wit:

11

1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

§ 775.021(4), Fla. Stat. (2013).

Significantly, when applying the same elements test, the reviewing court's analysis is limited to examining the elements of the statute, "without regard to the accusatory pleading or the proof adduced at trial." § 775.021(4)(a), Fla. Stat. (2013); see also Glover v. State, 29 So. 3d 325, 326 (Fla. 1st DCA 2010) (explaining that the examination of facts is improper when applying the same elements test). The supreme court recently reaffirmed the requirement to examine only the elements of the statutes involved when applying the third step of the double jeopardy analysis. See Roughton v. State, 185 So. 3d 1207, 1210 (Fla. 2016) (holding that an examination of anything other than elements of the charged offenses was contrary to the plain language of the statute).

## B. *Shelley* and *Hamilton*

Lee argues that the supreme court's decision in Shelley and our court's decision in Hamilton require reversal of his convictions for unlawful use of a two-way communications device and solicitation because both offenses are subsumed within his conviction for traveling after solicitation. We disagree. Both Shelley and Hamilton are cases where the reviewing court has proceeded to the third step of

12

the double jeopardy analysis and applied the same elements test. Thus, the holdings in those cases apply **only** where the reviewing court has determined that the defendant's convictions were based on conduct which occurred in a single criminal episode **and** did not involve distinct criminal acts. And neither decision disturbs well-established precedent that double jeopardy "does *not* prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts." Hayes, 803 So. 2d at 700 (emphasis in original). Because Lee's convictions arise both from separate criminal episodes and distinct criminal acts, the rationale in Shelley and Hamilton is not applicable and does not bar his multiple convictions.

### i. *Shelley*

Following a plea, Shelley was convicted of a single count of traveling and a single count of solicitation. Shelley, 176 So. 3d at 916-17. Shelley argued that his convictions violated double jeopardy because solicitation was a lesser-included offense of traveling after solicitation. On review, the supreme court agreed that a double jeopardy violation occurred. The court did not expressly analyze whether Shelley's convictions for traveling and solicitation arose from separate criminal episodes or involved distinct criminal acts. Id. at 917-19. Instead, the court limited its analysis to applying the third step of the double jeopardy test. However, the

13

supreme court applied only this step of the analysis because it concluded Shelley's dual convictions were based on the same conduct.

Although Shelley communicated "[o]ver the course of several days" with an undercover officer "posing as a single mother nudist 'looking for family fun,'" the court's opinion indicates that only a single act of solicitation was involved. Id. at 916. The supreme court specifically observed that the "State relied upon the **same conduct** to charge both offenses." Id. at 917 (emphasis added). And the court expressly held that "Shelley's dual convictions for solicitation and traveling after solicitation **based on the same conduct** impermissibly place[d] him in double jeopardy." Id. at 919 (emphasis added). Thus, because it concluded that Shelley's offenses were based on a single criminal act of solicitation, the court proceeded to apply the same elements test to determine whether the elements of solicitation were subsumed by the elements of traveling after solicitation. Id. at 919; see also Graham, 207 So. 3d at 141 (holding that when a defendant is convicted under multiple statutes for a single criminal act, a reviewing court applies the same elements test); Tindal, 145 So. 3d at 923-24 (applying the same elements test only after concluding that the offenses occurred during the same criminal episode and that the offenses were not based on distinct acts).

When applying the third step, the court examined the language in section 847.0135(3), Florida Statutes, in which the Legislature authorized separate

14

punishments for each use of a computer service or device to solicit a child and determined that this language failed to "address what effect charging a solicitation offense has on the State's ability to use **the same solicitation** to charge the defendant with traveling after solicitation." Id. at 919 (emphasis added). Holding that this intent did not translate into an intent to authorize separate convictions for conduct that constituted both solicitation and traveling after solicitation, the court applied the same elements test and determined that the elements of solicitation were subsumed within the elements of traveling after solicitation. Id.

Thus, the supreme court's holding is that "dual convictions for solicitation and traveling after solicitation" violate double jeopardy when they are "based on the same conduct." Id. at 919. Shelley does not proscribe convictions for traveling and solicitation based on either (1) multiple acts of solicitation that occur during separate criminal episodes or (2) distinct acts of solicitation that occur during a single criminal episode. And Shelley does not disturb well-established precedent allowing for multiple punishments where a defendant commits multiple criminal acts. Accordingly, dual convictions for solicitation and traveling are not barred by Shelley and do not violate double jeopardy, if the record demonstrates that the defendant made two or more solicitations. Rather, the holding in Shelley is limited to cases where the defendant is convicted of both solicitation and traveling after solicitation based on a single act of solicitation.

## ii. *Hamilton*

Lee also attempts to rely on our decision in Hamilton to argue that his charges of traveling after solicitation and unlawful use of a two-way communications device violate double jeopardy, but his argument fails. 163 So. 3d at 1278. Hamilton argued that his convictions for both offenses arose from the same criminal episode, and thus, violated double jeopardy because the elements of unlawful use of a two-way communications device were subsumed within the elements of traveling after solicitation. Id. We agreed and held that dual convictions for traveling after solicitation and unlawful use of a two-way communications device violated the prohibition against double jeopardy, when the offenses occurred during the course of the same criminal episode. Id. at 1278-79. Although this Court did not expressly examine whether there were distinct acts of solicitation, we implicitly did so by proceeding to step three of the double jeopardy analysis and examining whether the offenses contained the same elements. See Tindal, 145 So. 3d at 923-24; Sanders, 101 So. 3d at 375. Applying the same elements test, we concluded that Hamilton's dual convictions violated double jeopardy. Hamilton, 163 So. 3d at 1279.

Based on our holding that Hamilton's multiple convictions arose from a single criminal episode and our application of only the third step of the double jeopardy test, Hamilton does not proscribe convictions for traveling after solicitation and use of a two-way communications device based either on distinct acts of solicitation

16

occurring in multiple criminal episodes or on distinct acts of solicitation occurring in a single criminal episode. Rather, the holding in <u>Hamilton</u>, like the holding in <u>Shelley</u>, is limited to cases where the defendant is charged with multiple offenses based on a single act of solicitation.

### iii. Post- *Shelley* and *Hamilton* Decisions

In some recent decisions, our sister courts have misconstrued the holdings of <u>Shelley</u> and <u>Hamilton</u> in one or more of the following respects.[2] First, in some cases ostensibly involving separate criminal episodes or distinct acts, the courts appear to have proceeded directly to the third step of the double jeopardy analysis without examining whether the offenses arose from separate criminal episodes or distinct acts. <u>See, e.g.</u>, <u>Thomas v. State</u>, 209 So. 3d 35, 35 (Fla. 2d DCA 2016) (concluding, despite evidence at trial of "increasingly lurid text messages and communications" over the course of four days, that appellant's convictions for traveling and solicitation violated double jeopardy by examining only the charging documents and without analyzing whether his convictions were based on distinct acts of solicitation); <u>Stapler v. State</u>, 190 So. 3d 162, 164 (Fla. 5th DCA 2016) (finding a double jeopardy violation despite evidence of multiple acts of solicitation, and expressly declining to consider any information outside of the charging

---

[2] <u>But see</u> <u>Griffith v. State</u>, 208 So. 3d 1208 (Fla. 5th DCA 2017) (affirming appellant's convictions after concluding that the record did not demonstrate that the convictions for traveling and solicitation were based on the same conduct).

17

document).  Those courts should have applied the three-step analysis outlined in <u>Paul</u> and <u>Partch</u> and determined whether the convictions in those cases arose from a single criminal episode or whether the convictions were based on distinct acts before proceeding to the same elements test.

Second, other courts have applied the first two steps of the double jeopardy analysis but limited their review of the record to the charging document and the jury verdict.  <u>See, e.g.</u>, <u>Honaker v. State</u>, 199 So. 3d 1068, 1068 (Fla. 5th DCA 2016) (granting relief on appellant's postconviction double jeopardy claim by relying on the information to determine whether offenses arose from the same conduct despite evidence at trial that the defendant engaged in "inappropriate communications" over the course of four days); <u>Mizner v. State</u>, 154 So. 3d 391, 400 (Fla. 2d DCA 2014) (declining to consider the State's argument that the evidence at trial showed that the offenses occurred on different days during separate criminal episodes because the information was not sufficiently specific).  But, the proper application of steps one and two of the double jeopardy analysis necessarily requires an examination of the entire evidentiary record – examination of separate criminal episodes and distinct criminal acts should not be limited to the charging document and the jury verdict.

Third, it appears that some courts have implicitly and erroneously shifted the burden to the State to show that the jury's multiple guilty verdicts were not based on a single act of solicitation, rather than requiring the appellant to show that the record

18

could not support convictions for multiple offenses. [3]  See, e.g., Holt, 173 So. 3d at 1081 (holding that it may not assume that offenses were predicated on distinct acts where neither the charging information nor the jury verdict form included specific language predicating the charges on distinct acts).  But in double jeopardy cases, it is the appellant's burden to demonstrate that an error occurred at the trial level, not the State's burden to show that error did not occur.  See Edwards, 139 So. 3d at 983; Capron, 948 So. 2d at 957.

*C.  Application of the Three-Step Test to Lee's Multiple Convictions*

Initially, we observe that the previous majority opinion implicitly shifted the burden to the State to show that the jury did not convict Lee of all three offenses based on a single act of solicitation when it held:

> In this case, although the proof at trial of text messages over several days established multiple uses of Appellant's cell phone to facilitate a felony and also established multiple solicitations, **we cannot presume**

---

[3] We acknowledge that some of the language in our Partch decision has been construed to limit the distinct acts analysis to consideration of the charging information and the jury verdict and to implicitly shift the burden to the State to prove that an error did not occur.  For example, the Fifth District relied on Partch to support its conclusion that: "Neither the charging information nor the jury verdict form included language clearly predicating the disputed charges on two distinct acts. As a result, the State charged the offenses as occurring during a single criminal episode, and we may not assume that they were predicated on distinct acts." Holt v. State, 173 So. 3d 1079, 1081 (Fla. 5th DCA 2015).  Recognizing that Partch has been construed in this unintended manner, we now hold and clarify that a reviewing court must examine the entire record before reaching a conclusion about whether multiple convictions are based on distinct criminal acts.  And the burden is on the appellant to demonstrate that the record could not support multiple convictions.

**with certainty that Appellant was not convicted of the same act in all three counts**. The information in this case did not allege distinct acts; the verdict form did not separate the acts; **and the evidence presented to the jury could support, but did not require, the jury to find that the acts underlying Appellant's conviction were separate**. Therefore we find that a double jeopardy violation has occurred.

Lee v. State, 2016 WL 6928551, *4 (Fla. 1st DCA Nov. 28, 2016) (emphasis added).

We repeat that it is the defendant's burden to demonstrate on appeal that his convictions violate double jeopardy, not the State's burden to prove the negative. See Sprouse, 208 So. 3d at 787; Edwards, 139 So. 3d at 983. Consequently, having vacated our opinion issued on November 26, 2016, we consider Lee's claim of a double jeopardy violation under the framework outlined in Section A of this opinion.

To prevail on both of his double jeopardy claims, Lee must show that his convictions were based on the same act of solicitation. But his claims must fail, if the record establishes **three or more criminal episodes of solicitations or three or more distinct acts of solicitation**. A separate solicitation is required to support each of the counts charged in the information. One solicitation is required to support Lee's traveling after solicitation conviction, because all of the elements of solicitation are subsumed within the offense of traveling after solicitation. Shelley, 176 So. 3d at 919. A second solicitation is required to support Lee's conviction for

unlawful use of a two-way communications device.  <u>Hamilton</u>, 163 So. 3d at 1279.

And a third solicitation is necessary to support the solicitation conviction.

The State charged Lee as follows:

**BRIAN MITCHELL LEE, on or about January 2, 2014**, at and in Escambia County, Florida, did knowingly travel any distance either within this state, to this state, or from this state by any means, or who attempted to do so, for the purpose of engaging in any illegal act described in Chapter 794, Chapter 800, or Chapter 827, Florida Statutes, or to otherwise engage in other unlawful sexual conduct with a child less than 18 years of age or with another person believed by the said **BRIAN MITCHELL LEE** to be a child less than 18 years of age, after using a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure or entice or attempted to seduce, solicit, lure, or entice a child or another person believed by **BRIAN MITCHELL LEE** to be a child, to-wit**:  a law enforcement officer posing as a 14-year-old male child**, to engage in any illegal act described in Chapter 794, Chapter 800, or Chapter 827, Florida Statutes, or to otherwise engage in other unlawful sexual conduct with a child, in violation of Section 847.0135(4)(a), Florida Statutes.

**BRIAN MITCHELL LEE, on one or more occasions between December 22, 2013, and January 1, 2014,** at an in Escambia County, Florida, did unlawfully and knowingly use a two-way communication device, to-wit:  **cellular telephone**, to facilitate or further the commission of a felony offense, to-wit:  **Traveling to Meet a Minor to Engage in Sexual Conduct**, in violation of Section 934.215, Florida Statutes.

**BRIAN MITCHELL LEE, on one or more occasions between December 22, 2013, and January 1, 2014**, at and in Escambia County, Florida, did knowingly utilize a computer on-line service, Internet service, or local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by the said **BRIAN MITCHELL LEE** to be a child less than 18 years of age, to-wit:  **a law enforcement officer posing as a 14-**

21

**year-old male child**, to commit any illegal act described in Chapter 794, relating to sexual battery; Chapter 800, relating to lewdness and indecent exposure; or Chapter 827, relating to child abuse, or to otherwise engage in any unlawful sexual conduct with a child or with another person believed by the said **BRIAN MITCHELL LEE** to be a child, in violation of Section 847.01325(3)(a), Florida Statutes.

Thus, the unlawful use of the two-way communications device and solicitation counts were charged as occurring "**on one or more occasions** between December 22, 2013 and January 1, 2014." The traveling after solicitation count was charged as occurring on January 2, 2014. But because there was no evidence of a solicitation on January 2, 2014, the solicitation required to support the traveling count must have occurred during the period the parties were communicating via email: December 22, 2013 through January 1, 2014. The solicitations required to support the other two counts also must have occurred during the same eleven-day period.

Based on the unambiguous language of the information, Lee was on notice and the jury could find that Lee committed multiple acts of solicitation during the charged period. Further, neither the jury instructions nor the verdict form limited the jury to considering only one act of solicitation for all three offenses. Rather, both were general and contained no reference to any date or any specific act of solicitation.

But despite the express language of the information alleging one or more acts of solicitation over the course of eleven days, Lee argues that the charging documents, jury instructions, and the verdict form were not sufficiently specific to

22

allow the jury to base each of his convictions on a separate solicitation.[4] This argument is meritless for two reasons. First, the State is not required to allege in the information the specific solicitation associated with each count charged in the information or listed on the verdict form to defeat a double jeopardy claim.[5] See Fravel v. State, 188 So. 3d 969, 971 (Fla. 4th DCA 2016) (holding that double jeopardy was not implicated by a two-count information that charged the defendant with two degrees of the same offense where the evidence at trial clearly distinguished between the two counts); Nicholson, 757 So. 2d at 1228 (rejecting a double jeopardy claim based on two counts of throwing an object into a house where "the evidence at trial clearly distinguished between the two separate offenses."). Second, to determine whether multiple solicitations occurred during different criminal episodes or whether there were distinct acts of solicitation within a single criminal episode, we are required to review the record in its entirety. Graham, 207 So. 3d at 141 (relying on evidence presented at trial to determine whether appellant's

---

[4] The trial court went over the jury instructions line-by-line with both parties. Defense counsel agreed to the standard jury instructions and did not request any special instructions. See Jaimes v. State, 51 So. 3d 445, 448 (Fla. 2010) (holding that jury instructions are subject to the contemporaneous objection rule). Further, defense counsel agreed to the verdict form proposed by the court. See Morris v. State, 658 So. 2d 155, 156 (Fla. 1st DCA 1995) (holding that a contemporaneous objection is required to preserve an argument about an error in a verdict form).

[5] Florida Rule of Criminal Procedure 3.140(n) permits a defendant to file a motion for a statement of particulars if the defendant believes that the information is insufficient to allow preparation of a proper defense. Lee did not file such a motion.

convictions were based on distinct acts); <u>Sanders</u>, 101 So. 3d at 375 (relying on the record to determine whether appellant's convictions occurred in the same criminal episode). When viewed in the light most favorable to the jury's verdict, the record shows that Lee's convictions were based on conduct that occurred during separate criminal episodes and involved at least five distinct acts of solicitation.

*i. Step One – Lee's Solicitations Occurred During Multiple Criminal Episodes*

To determine whether Lee's multiple convictions arose from conduct occurring during a single criminal episode, we consider the following factors: whether there were multiple victims, whether the criminal offenses occurred in multiple locations, and whether there was a temporal break between offenses. <u>Partch</u>, 43 So. 3d at 760. It is undisputed that this case does not involve multiple victims. However, the record demonstrates that over the course of eleven days, Lee committed multiple acts of solicitation using his two-way communications device from multiple locations. The trial testimony established that Lee solicited the investigator using his mobile phone from his home, from his office, and from the dog track.

In addition to the undisputed evidence of multiple locations, there were several significant temporal breaks between Lee's solicitations of the person he

24

thought was a fourteen-year-old.[6]  A review of the emails in the record shows that almost thirteen hours elapsed between Lee's first and second conversations with the investigator.  The longest temporal break in communication was seventy-two hours; this occurred when Lee traveled out of state for the holidays.  Another significant break in communication occurred between December 26 and December 27 when over sixteen hours elapsed before Lee and the investigator resumed communication. And, during the next four days, there were five-hour, eleven-hour, and twelve-hour breaks in their conversations.  The email communications show that Lee slept, went to work, traveled, and socialized when he was not communicating with "Matt." These breaks gave Lee ample opportunity to pause and reflect on the legality of his actions.  White, 924 So. 2d at 957-58 (holding that appellant had time to form a new criminal intent while waiting for the victim to emerge from the bathroom); Duke v. State, 444 So. 2d 492, 494 (Fla. 2d DCA 1984) (holding that "a matter of seconds" was sufficient for appellant to form a new criminal intent between sexual battery offenses); Bass v. State, 380 So. 2d 1181, 1183 (Fla. 5th DCA 1980) (holding that the time it took appellant to drive to a more isolated location was sufficient for appellant to form a new criminal intent between sexual battery offenses).

---

[6] The distinct acts of solicitation and the times they occurred will be more fully described in the following section.

25

Thus, viewing the record in the light most favorable to the jury's verdict, we hold that the solicitations in this case occurred during the course of multiple criminal episodes. Therefore, Lee cannot show he was convicted for multiple offenses of solicitation arising from the same criminal episode. This conclusion alone is sufficient to defeat his double jeopardy arguments. See Hammel, 934 So. 2d at 635 (holding that appellant was properly charged for each internet conversation without violating double jeopardy protections because each conversation was a distinct criminal episode).

*ii. Step Two – Lee's Multiple Distinct Acts of Solicitations*

However, even were we to assume that the conversations between Lee and the investigator should be treated as a single ongoing eleven-day criminal episode, we would conclude that the record includes evidence of multiple, distinct acts of solicitation. In assessing whether Lee's acts during the eleven-day conversation constitute distinct acts, we examine the record to determine whether there were temporal breaks, intervening acts, changes in locations, and time to form a new criminal intent between Lee's solicitations. Partch, 43 So. 3d at 761. As discussed above, the record must show at least three separate and distinct acts of solicitation to uphold Lee's convictions.

26

The uncontroverted record before this Court shows that Lee solicited the investigator at least **five times** for different unlawful acts, from different locations, and at different times via a two-way communications device (his mobile phone):

1.  On December 26, 2013, between 5:46 p.m. and 8:12 p.m., Lee solicited "Matt" for a lewd or lascivious battery[7] by offering to teach "Matt" how to perform oral sex. This solicitation occurred while Lee was in Indiana visiting his family for the holidays.

2.  The second solicitation occurred the following night on December 27, 2013, between 11:16 p.m. and 11:49 p.m., as Lee was traveling back to Florida. At that time, Lee solicited "Matt" for lewd or lascivious molestation[8] when he asked to grab "Matt's" buttock and genital area.

3.  Another solicitation for lewd or lascivious battery occurred an hour later when Lee offered to perform oral sex on "Matt." Lee was still traveling back to Florida at this point as he mentioned stopping to refuel.

4.  The solicitations resumed two days later on December 30, 2013, between 8:08 p.m. and 8:57 p.m. when Lee was at home. At that time, Lee solicited "Matt" for another lewd and lascivious battery by describing in detail a fantasy about engaging in sexual conduct at a water park with "Matt," who would appear to others to be his son.

---

[7] Lewd or lascivious battery is defined as "engaging in sexual activity with a person 12 years of age or older but less than 16 years of age." § 800.04(4)(a)1., Fla Stat. (2013). For the purposes of this statute, sexual activity is defined as "the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual activity does not include an act done for a bona fide medical purpose." § 800.04(1)(a), Fla. Stat. (2013).

[8] Lewd or lascivious molestation occurs when: "A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator . . . ." § 800.04(5)(a), Fla. Stat. (2013).

27

5. The final solicitation occurred three days later on January 1, 2014 (the day before Lee traveled to meet "Matt"), at 10:22 p.m. when Lee solicited Matt for a lewd or lascivious battery by discussing the performance of oral sex. Lee was at home when this conversation occurred.

Lee solicited the investigator for unlawful sex acts over an eleven-day time span with up to a three-day temporal break between solicitations. Those breaks in time gave Lee ample opportunity to pause and reflect on the legality of his actions. Duke, 444 So. 2d at 494; Bass, 380 So. 2d at 1183. Lee also changed locations between solicitations. He solicited the investigator while visiting family in Indiana, while returning to Florida, and while he was at home. And finally, the solicitations were distinct in character. Lee solicited the person he thought to be a minor for multiple, distinct acts of lewd or lascivious battery and lewd or lascivious molestation.

Based on the multiple temporal breaks between communications, the multiple locations involved, and the different types of unlawful acts Lee solicited, we hold that the record established no fewer than **five** distinct acts of solicitation. This evidence of five distinct solicitations is more than sufficient to support Lee's three convictions: one solicitation to prove the underlying offense necessary for his conviction for traveling to meet a minor, a second solicitation to prove the underlying offense necessary for his conviction for unlawful use of a two-way communications device, and a third solicitation to prove that he used a computer to

28

solicit a child. And even if all five of the solicitations had occurred during the same criminal episode, we would still hold these acts to be separately punishable, because the Legislature has expressed its intent to charge and punish each separate act of solicitation. See § 847.0135(3), Fla. Stat. (2013).

Accordingly, viewing the record in the light most favorable to the jury's verdict, we conclude that Lee's convictions for traveling after solicitation, unlawful use of a two-way communications device, and soliciting a minor do not violate double jeopardy because his convictions were based on distinct criminal acts. Based on this conclusion, we need not proceed to step three of the double jeopardy analysis – the same elements test.[9] Our analysis of Lee's double jeopardy claim ends here.

## D. Downward Departure Sentence

The State appeals the trial court's imposition of the downward departure sentence in this case. The imposition of a downward departure sentence is a two-part process. Childers v. State, 171 So. 3d 170, 172 (Fla. 1st DCA 2015). First, the trial court must determine whether there is a legal reason for departure and factual support for that reason. Id. This portion of the trial court's decision will be sustained on appellate review if the court applied the correct rule of law and if competent, substantial evidence supports its ruling. Id. Second, the trial court must determine

---

[9] Had Lee's convictions been based on a single act of solicitation occurring during a single criminal episode, then the decision in Shelley would have required reversal of his solicitation conviction.

29

whether departure is the best sentencing option for the defendant by weighing the totality of the circumstances, including aggravating and mitigating factors. Id. We review this portion of the trial court's decision for an abuse of discretion. Id.

Here, the State argues that the trial court erred in imposing a downward departure sentence because there was no evidence to support the court's statutory ground for departure (that Lee required specialized treatment for a mental disorder that was unrelated to substance abuse or addiction) and because the non-statutory grounds (Lee's ability to be rehabilitated, his contribution to the community, his employment history, his family background, and his lack of a criminal history) were not valid reasons for departure. We agree.

### i. Preservation

Before the merits of this argument may be addressed, we must first determine whether the State properly preserved this argument for review. The supreme court recently held that the State's objection to a downward departure sentence is properly preserved when the prosecutor objects during the same proceeding in which the defendant is sentenced and states the legal grounds for the objection. State v. Wiley, 2017 WL 526510, at *2 (Fla. Feb. 9, 2017). Here, the State properly preserved its argument that the trial court erred in imposing a downward departure sentence. At the sentencing hearing, the State argued that Lee was a danger to the community and asked the court to impose a sentence of at least five years' imprisonment. Further,

30

the State argued in rebuttal to defense counsel's argument for a departure sentence that none of the mitigating factors presented by the defense warranted a departure. Because the trial court was on notice of the reasons that the State objected to the trial court's imposition of a departure sentence and the State raises those same arguments on appeal, this issue is preserved for appellate review.

## ii. Analysis

Lee was convicted of traveling to meet a minor to engage in sexual conduct, which is a second-degree felony punishable by up to fifteen years' imprisonment. §§ 775.082(3)(d), 847.0135(4)(a), Fla. Stat. (2013). Lee was also convicted of unlawful use of a two-way communications device and using a computer to solicit sexual conduct of a child, which are third-degree felonies punishable by up to five years' imprisonment. §§ 775.082(3)(e), 847.0135(3)(a), 934.215, Fla. Stat. (2013). Although Lee's Criminal Punishment Code scoresheet provided for a minimum permissible sentence of forty-five months' imprisonment, the trial court was free to impose up to the statutory maximum on each count and to run the sentences consecutively. §§ 921.00265(1), 921.16(1), Fla. Stat. (2013). Thus, Lee was facing a total of twenty-five years' imprisonment. Instead, he was sentenced to a total of two years' community control followed by thirteen years' probation.

The trial court relied on the statutory mitigating factor that Lee "requires specialized treatment for a mental disorder that is unrelated to substance abuse or

31

addiction, or for a physical disability, and the defendant is amenable to treatment."
§ 921.0026(2)(d), Fla. Stat. (2013). The trial court also relied on the following non-statutory mitigating factors: Lee's ability to be rehabilitated, his contribution to the community, his employment history, his family background, and his lack of criminal history.

*a. Statutory Mitigator*

Section 921.0026(2)(d) allows for a departure sentence when a defendant proves by a preponderance of the evidence: (1) he has a mental disorder unrelated to substance abuse or addiction or a physical disability; (2) his disorder or disability requires specialized treatment; and (3) he is amenable to treatment. State v. Chubbuck, 141 So. 3d 1163, 1171 (Fla. 2014). Although the trial court relied on this factor, Lee never sought mitigation on this basis at the sentencing hearing or in his sentencing memorandum. Further, the record does not contain sufficient evidence to support departure on this basis. The trial court correctly observed that Lee suffered from depression not related to substance abuse or addiction. But there was no evidence that Lee was suffering from depression at the time he committed his offense or at the time of sentencing, that he needed specialized treatment, or that he was amenable to treatment. Thus, there is no competent, substantial evidence to support a departure based on this factor.

## b. Non-Statutory Mitigators

The trial court also departed based on several non-statutory mitigating factors. When the court bases a departure on a non-statutory factor, the factor must be permissible and supported by competent, substantial evidence. State v. Bowman, 123 So. 3d 107, 109 (Fla. 1st DCA 2013). To be permissible, the non-statutory mitigator must be consistent with legislative sentencing policies. Id. "The mitigating factors specifically listed by the legislature focus on the nature of the crime, the conduct of the defendant or the mental capacity, condition, or attitude of the defendant. Further, the first purpose of sentencing is to punish, not rehabilitate. Finally, the legislative sentencing policy is to ensure that violent criminals are incarcerated." State v. Chestnut, 718 So. 2d 312, 313 (Fla. 5th DCA 1998).

None of the non-statutory mitigating factors relied on by the trial court were legally permissible to sustain a departure sentence. Initially, the trial court pointed to Lee's potential for rehabilitation as a reason for imposing a lesser sentence. However, amenability to rehabilitation has been rejected as a valid reason for a departure. Id. at 313. Next, the court relied on Lee's employment history and contribution to the community as a physician as mitigating factors. But the fact that Lee is employed as a family practitioner who is highly valued by his patients is not a sufficient reason to depart from the Criminal Punishment Code. As the Fourth District observed: "All defendants suffer the consequences of a criminal conviction.

33

The sentencing guidelines do not provide special treatment for the trained, educated or licensed. To achieve equality in sentencing, trial judges must be blind as to the color of a defendant's collar." State v. Lacey, 553 So. 2d 778, 780 (Fla. 4th DCA 1989).

The trial court also noted that Lee had the support of his family when it decided to impose a departure sentence. However, the fact that a defendant has strong family support has been rejected as a valid reason for a departure. Chestnut, 718 So. 2d at 314 ("[W]e do not believe that the legislature intended that a defendant from an exemplary family should be excused from serving the sentence recommended for his offense."). Finally, the court relied on Lee's lack of criminal history. This is not a valid reason for departing because a defendant's criminal history is considered when calculating his minimum permissible sentence. See State v. Chapman, 805 So. 2d 906, 908 (Fla. 2d DCA 2001); State v. Scaife, 676 So. 2d 1035, 1036 (Fla. 5th DCA 1996). Thus, none of the non-statutory mitigators were permissible considerations in accordance with legislative sentencing policies. As neither the statutory mitigator nor the non-statutory mitigators supported a downward departure, the trial court erred in sentencing Lee.

### III. Conclusion

Because, viewed in the light most favorable to the jury verdict, the record demonstrates that Lee's convictions for traveling after solicitation, unlawful use of

a two-way communications device, and solicitation occurred during separate criminal episodes and involved distinct acts of solicitation, Lee's convictions do not violate double jeopardy. We, therefore, affirm Lee's convictions. However, because the trial court erred in imposing a downward departure sentence, we vacate Lee's sentences and remand for resentencing. On remand, the trial court may again consider imposing a departure sentence if there are valid legal grounds to support the departure sentence, and those legal grounds are supported by competent, substantial evidence. Jackson v. State, 64 So. 3d 90 (Fla. 2011).

AFFIRMED in part, REVERSED in part, and REMANDED.

ROBERTS, C.J., WOLF, LEWIS, B.L. THOMAS, WETHERELL, RAY, OSTERHAUS, KELSEY, WINOKUR, JAY, WINSOR, and M.K. THOMAS, JJ., concur.

WINOKUR, J., concurs in an opinion in which B.L. THOMAS and OSTERHAUS, JJ., join.

BILBREY, J., concurs in part and dissents in part in an opinion in which MAKAR, J., joins.

MAKAR, J., concurs in part and dissents in part with opinion.

WINOKUR, J., concurring.

I fully agree with the majority opinion, both in its approach to analyzing the double-jeopardy issue as well as its conclusion here. However, I also see a more fundamental issue with Lee's position that the majority opinion does not address: neither the protection against double jeopardy, nor the requirements of section 775.021(4), Florida Statutes, entitled Lee to pretrial dismissal of any charges based upon a claim that multiple charges violated his protections against multiple punishment. Lee's motion to dismiss could have been denied on this basis alone.

As the majority opinion notes, "[t]he guarantee against double jeopardy consists of three separate constitutional protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Lippman v. State, 633 So. 2d 1061, 1064 (Fla. 1994) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). This case involves the protection against "multiple punishments for the same offense."

In a case involving the protection against successive prosecution, the defendant's double-jeopardy rights are violated when the government files a successive criminal charge. See Dell'Orfano v. State, 616 So. 2d 33, 36 (Fla. 1993) (holding that "a double jeopardy violation will be presumed when the State attempts a successive prosecution" under specific circumstances). As such, dismissal of the

36

successive charge is the appropriate remedy for a successive-prosecution violation. Fla. R. Crim. P. 3.190(b) (defenses of "former acquittal" and "former jeopardy" may be made by motion to dismiss the indictment or information).

However, in the multiple punishment context, it is the punishment that implicates the protection against double jeopardy, not the criminal charges alone. Simply charging and trying a defendant on multiple charges for the same crime does not violate double jeopardy. For this reason, a pretrial dismissal of charges was not an appropriate remedy in this case, regardless of whether the counts violated the multiple-punishment aspect of double jeopardy.

The United States Supreme Court made this rule clear in Ohio v. Johnson, 467 U.S. 493 (1984). Johnson was charged with murder, involuntary manslaughter, aggravated robbery, and grand theft, and entered a guilty plea to involuntary manslaughter and grand theft. Because these crimes were lesser-included offenses of the remaining crimes (murder and robbery, respectively), the state court granted the defendant's motion to dismiss the remaining counts, on the ground that continuing the prosecution would constitute a double-jeopardy violation. Johnson at 494-96. The Supreme Court disagreed, holding that "multiple punishments" protections are not implicated merely because the defendant is put on trial for two offenses when one offense is subsumed by the other. Id. at 499-500. "While the Double Jeopardy Clause may protect a defendant against cumulative punishments

for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution." Id.[10]

We applied the Johnson rule in State v. Sholl, 18 So. 3d 1158 (Fla. 1st DCA 2009). Sholl claimed that the charge of transmitting material harmful to a minor violated the prohibition against double jeopardy because it contained the same elements as a separate charge of lewd and lascivious exhibition. We ruled that the defendant was not entitled to pretrial dismissal of any charges:

> [T]he trial court should not have considered Sholl's double jeopardy claim until sentencing. When an information contains two or more charges which amount to the same offense, "[d]ouble jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning." Claps v. State, 971 So.2d 131, 134 (Fla. 2d DCA 2007). To this end, double jeopardy protections may not be extended to an earlier stage of the proceeding, such as the filing of the information or jury selection. Id. Otherwise, the trial court would be "usurp[ing] the State's discretion to make strategic decisions about charging alleged criminal activity." Id. at 134–35.

Sholl, 18 So. 3d at 1162. The Sholl court concluded that the double jeopardy argument was "premature and an improper basis for dismissal." Id. (footnote omitted). See also State v. Lewek, 656 So. 2d 268 (Fla. 4th DCA 1995) ("Despite

---

[10] "Multiple punishment" does not necessarily mean "multiple sentences." The Florida Supreme Court has ruled the "multiple punishment" prohibition is implicated by "multiple convictions and punishments for the same offense." Gordon v. State, 780 So. 2d 17, 19 (Fla. 2001) (emphasis supplied), receded on other grounds by Valdes v. State, 3 So. 3d 1067 (Fla. 2009).

38

this clear rule saying that a defendant cannot be <u>convicted</u> of both manslaughter and vehicular homicide for a single death, there is no such rule saying that he cannot be <u>charged</u> with both crimes.") (emphasis in original). [11]

Johnson and Sholl apply here. Lee moved to dismiss the information pursuant to Florida Rule of Criminal Procedure 3.190, on essentially the same ground as the defendant in <u>Sholl</u>. But even if some of the charges against Lee had been subsumed by other charges, he would not have been entitled to dismissal of the charges. [12]

---

[11] Note that the issue here is not the allowable "unit of prosecution." <u>See</u> <u>State v. Rubio</u>, 967 So. 2d 768 (Fla. 2007) (determining whether split-fee patient brokering statute permitted a single charge based on the fee-splitting agreement, or separate charges for every individual instance of fee-splitting); <u>Allen v. State</u>, 82 So. 3d 118 (Fla. 4th DCA 2012) (determining whether the crime of transmission of images harmful to minors permits only a single count for one transmission, or separate counts for each image transmitted). A "unit of prosecution" issue addresses whether the Legislature intended a single charge for criminal conduct, or multiple charges for individual acts within the criminal conduct. This issue obviously entails the propriety of the charges themselves, so pretrial dismissal of excess charges would be the appropriate remedy. However, to the extent that excess counts violate the multiple-punishment aspect of double jeopardy, relief for the double-jeopardy violation is not available until multiple convictions are imposed.

[12] Section 775.021(4) provides the statutory method for determining whether multiple punishments violate double jeopardy. <u>See</u> <u>e.g.</u>, <u>State v. Shelley</u>, 176 So. 3d 914, 917-18 (Fla. 2015) ("[A]bsent an explicit statement of legislative intent to authorize separate punishments for two crimes, application of the <u>Blockburger[ v. United States</u>, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] 'same-elements' test pursuant to section 775.021(4), Florida Statutes[,] is the sole method of determining whether multiple punishments are double-jeopardy violations.") (quoting <u>Gaber v. State</u>, 684 So. 2d 189, 192 (Fla. 1996)). Moreover, section 775.021(4) speaks in terms of "conviction," "adjudication of guilt," and "sentence." Accordingly, like the constitutional protection against multiple punishments for the

This is not an academic distinction where the motion to dismiss is simply "premature," as we characterized it in Sholl. The dissenting opinions here conclude that Lee made a prima facie showing of a double-jeopardy violation by alleging in his motion to dismiss that some of his charges were subsumed by other charges, which shifted the burden to the State to demonstrate that the three counts did not violate double jeopardy. However, under Johnson and Sholl, the motion to dismiss was improper, so it could not have shifted the burden to the State to disprove a double-jeopardy violation.[13]

Judge Makar's dissenting opinion argues that Lee was entitled to "have his double jeopardy concerns addressed at some point," even if he was not entitled to pretrial dismissal, and that Sholl "doesn't mean trial judges must put their heads in the sand from the start until the end of trial, ignoring obvious double jeopardy problems raised pre-trial." Slip op. at 67. I support a policy against judicial head-in-the-sand putting. But what Lee actually asked of the trial court was to "dismiss the

same crime, section 775.021(4) does not provide for pretrial dismissal of counts as a remedy.

[13] Some cases discussed in the other opinions seem to suggest that a defendant must file a pretrial motion to dismiss charges in order to "preserve" a double-jeopardy challenge based on multiple punishments. See Mahar v. State, 190 So. 3d 1123 (Fla. 2d DCA 2016); Fravel v. State, 188 So. 3d 969 (Fla. 4th DCA 2016). Because a defendant is not entitled to pretrial dismissal of charges in this circumstance, a motion to dismiss is not necessary to preserve this issue. Neither of these cases based its ruling on this alleged lack of preservation.

charging instrument against him," based on the claim that the information itself violated his double-jeopardy rights. This remedy was foreclosed by Sholl, and the trial court correctly denied it. I see no way that the trial court can "presume" a double-jeopardy violation pretrial, shifting the burden to the State to disprove it, unless the remedy for the State's failure to disprove it is dismissal of charges. And because pretrial dismissal of charges is not an appropriate remedy for a multiple punishment violation, this proposal cannot work.

In summary, a defendant claiming a multiple-punishment violation under either the Double Jeopardy Clause or section 775.021(4) is not entitled to pretrial dismissal of any counts of the information or indictment. With this observation, I concur fully in the majority opinion.

B.L. THOMAS and OSTERHAUS, JJ., join.

BILBREY, J., concurring in part and dissenting in part.

Because the en banc majority opinion conflicts with State v. Shelley, 176 So. 3d 914 (Fla. 2015) (Shelley II), and numerous cases from other Florida district courts, on the application of the double jeopardy protections found in the United States and Florida constitutions, I respectfully dissent from that part of the opinion and write to explain my view. I agree with other holdings of the en banc majority opinion as discussed below.

Brian Mitchell Lee appeals his convictions following a jury trial, for traveling to meet a minor after use of a computer service to seduce, solicit, or lure the minor to engage in sex, in violation of section 847.0135(4)(a), Florida Statutes (2013) (count I); unlawful use of a two-way communications device to facilitate the commission of a felony, in violation of section 934.215, Florida Statutes (2013) (count II); and use of a computer service to seduce, solicit, or lure a minor to engage in sex, in violation of section 847.0135(3)(a), Florida Statutes (2013) (count III). Lee argues that the elements of the unlawful use of the cell-phone (count II) and use of the computer service to solicit (count III) offenses are subsumed by the elements of the travel after solicitation offense (count I), and therefore the convictions and sentences for all three offenses constitute double jeopardy. Because the information in this case did not allege distinct acts, the verdict form did not separate the acts, and the evidence presented to the jury was such that the State did not meet its burden —

42

after being challenged by Lee — to show that the acts underlying Lee's conviction were separate, I would agree with Lee's double jeopardy argument and reverse Lee's convictions and sentences for counts II and III in this case. I agree with the en banc majority's rejection of the other issues raised by Lee without comment.

As to the State's cross-appeal of the Lee's downward departure sentences, I agree with the en banc majority that the recent Florida Supreme Court decision <u>State v. Wiley</u>, 210 So. 3d 658 (Fla. 2017) (<u>Wiley II</u>), which quashed our earlier decision in <u>State v. Wiley,</u> 179 So. 3d 481 (Fla. 1st DCA 2015) (<u>Wiley I</u>), preserves for our review the State's objection to the downward departure sentences of Lee. I also agree with the en banc majority that now we can consider the merits of the State's objection to the departure sentences, the trial court improperly departed and the case should be remanded for resentencing, but only as to count I.

## <u>PROCEEDINGS AT TRIAL</u>

The State charged Lee with travel after solicitation in count I, "on or about January 2, 2014." Count II charged Lee with use of a two-way communications device to facilitate commission of a felony, and count III charged him with use of a computer service to seduce or solicit a child, both charges alleged to have occurred "on one or more occasions between December 22, 2013, and January 1, 2014." The charges arose from Lee's electronic correspondence with an Escambia County Sheriff's investigator posing online as a 14-year-old boy. The investigator

43

responded to Lee's Internet advertisement on Craigslist for legal sexual activity between adults, but the investigator on December 22, 2013, informed Lee that he was communicating with an underage boy. Lee persisted with frequent messages several times per day with increasingly graphic and explicit suggestions of sexual activity, between December 22, 2013, and January 1, 2014. The only gap in communications was during Christmas Eve and Christmas Day. None of the messages dated January 2, 2014, contained any reference to sexual activity, but January 2, 2014, was the date Lee traveled to meet the investigator's fictitious persona. Lee was arrested when he arrived at the agreed-upon meeting place. Following a jury trial, Lee was convicted and sentenced on all three counts.

## BURDEN OF PROOF

I respectfully submit that the cases the en banc majority cites have applied an oversimplified test by stating that the burden is on a defendant/appellant to show a double jeopardy violation at the trial level. I think a number of federal cases more thoroughly explain the burden. "In order to establish a double jeopardy claim, the defendant must first present a prima facia claim that double jeopardy principles have been violated. . . . Once a defendant proffers sufficient proof to support a nonfrivolous claim, the burden shifts to the government to show that double jeopardy principles do not bar the proceeding." U.S. v. Cruce, 21 F.3d 70, 74 (5th Cir. 1994) (citations omitted); see also United States v. Stricklin, 591 F.2d 1112 (5th Cir.

44

1979); United States v. Reed, 980 F.2d 1568 (11th Cir. 1993).[14]

Here, before trial, Lee moved to dismiss the soliciting and unlawful use of a communication device charges based on double jeopardy. The trial court heard the motion, but noted controlling case law from our court[15] and a case where the Second District had certified conflict.[16] The motion was denied. By setting forth a prima facia case for double jeopardy violation by showing that Counts II and III were subsumed in Count I, and with the information showing that the dates overlapped, I believe that the burden then shifted to the State to show no double jeopardy violation was present. The State could easily have done that by amending the information to charge separate offenses occurring on different dates or even after a temporal break on the same date. See § 847.0135(3)(b), Fla. Stat. ("Each separate use of a computer

---

[14] "'It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt.'" Warmington v. State, 149 So. 3d 648, 652 (Fla. 2014) (quoting Jackson v. State, 575 So. 2d 181, 188 (Fla. 1991)). It is the State's burden to show a defendant's Fourth Amendment right was not violated in a warrantless seizure. Dunaway v. New York, 442 U.S. 200 (1979). It is the State's burden to show a defendant's Fifth Amendment right against self-incrimination was not violated during custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966). Why should the State's burden be different in dealing with the double jeopardy clause in the Fifth Amendment and article I, section 9, of the Florida Constitution?

[15] The case the trial court was presumably referring to, State v. Murphy, 124 So. 3d 323 (Fla. 1st DCA 2013), was disapproved by the Florida Supreme Court in State v. Shelley, 176 So. 3d 914 (Fla. 2015) (Shelley II).

[16] This case was presumably Shelley v. State, 134 So. 3d 1138 (Fla. 2d DCA 2014) (Shelley I) which was approved in Shelley II.

45

online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission wherein an offense described in this section is committed **may be charged** as a separate offense.") (emphasis added).

The court in Griffith v. State, 208 So. 3d 1208 (Fla. 5th DCA 2017), recognized that a different analysis applies when a defendant raises a double jeopardy challenge for the first time on appeal. In that situation the double jeopardy violation must be apparent from the face of the record. Id. at 1211 (citing Novaton v. State, 634 So. 2d 607 (Fla. 1994)). It is in the situation where a double jeopardy violation is first raised on appeal that the burden is on the defendant. Griffith, 208 So. 3d at 1211 (citing Edwards v. State, 139 So. 3d 981 (Fla. 1st DCA 2014)). As discussed below, Lee raised the double jeopardy violations before the trial court and maintained his innocence throughout the case; therefore, I believe it was the State's burden to show no double jeopardy violation occurred. I do not believe the State met this burden.[17]

---

[17] Sprouse v. State, 208 So. 3d 785 (Fla. 1st DCA 2016), cited by the en banc majority as to the burden, is distinguishable because sexual battery and lewd and lascivious battery are separate and distinct criminal acts which require different elements of proof. See State v. Drawdy, 136 So. 3d 1209 (Fla. 2014). Unlike those crimes, as discussed below, the three crimes Lee was charged with are the "same crime" for double jeopardy purposes. The same analysis applies to Williams v. State, 90 So. 3d 931 (Fla. 1st DCA 2012), also cited by the en banc majority, where the attempted premeditated murder and attempted felony murder counts required proof of different elements. See § 775.021(4)(a), Fla. Stat. In Capron v. State, 948 So. 2d 954 (Fla. 5th DCA 2007), cited by the en banc majority, double jeopardy was reviewed for fundamental error since it was not raised at the trial level. In Koon v. State, 463 So.

## DOUBLE JEOPARDY

As noted by the en banc majority, the Fifth Amendment protection against double jeopardy includes the protection claimed here, the protection against multiple punishments for the same offense.  See North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds by* Alabama v. Smith, 490 U.S. 794 (1989).  As explained by the Florida Supreme Court:

> The most familiar concept of the term "double jeopardy" is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense.  The constitutional protection against double jeopardy is found in both article I, section 9, of the Florida Constitution and the Fifth Amendment to the United States Constitution, which contain double jeopardy clauses.  Despite this constitutional protection, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments.

Valdes v. State, 3 So. 3d 1067, 1069 (Fla. 2009) (footnote omitted).  Accordingly, a starting point for a double jeopardy determination is whether the multiple

---

2d 201, 203 (Fla. 1985), cited in Capron, it was held to be the defendant's burden to show "that the state authorities had little or no independent volition in state court proceedings" when state and federal prosecutions for the same crime were being undertaken pursuant to the dual sovereign exception to double jeopardy.  See Bartkus v. Illinois, 359 U.S. 121 (1959).  I would read Koon as being consistent with the above federal cases that a defendant must make out a prima facia case, at which time the burden falls on the State to show no double jeopardy violation.  In Koon, the defendant did not make a case for application of the exception to the dual sovereign doctrine.  Here, Lee made a prima facia case for a double jeopardy violation by showing he was charged with the same crimes as a matter of law for the same offense by one sovereign, the State of Florida.

convictions are for "the same criminal offense."[18]

The test to determine if two convictions are for the "same offense" was set out in Blockburger v. United States, 284 U.S. 299 (1932). The "Blockburger test" is codified in Florida in section 775.021(4), Florida Statutes, which provides:

> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; . . . For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
> (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
> 1. Offenses which require identical elements of proof.
> 2. Offenses which are degrees of the same offense as provided by statute.
> 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

§ 775.021(4), Fla. Stat. (2013).

The offenses proscribed by sections 847.0135(4) and 934.215, Florida Statutes (counts I and II in this case, respectively), have been deemed the same for purposes of double jeopardy analysis because "the unlawful use of a two-way

---

[18] The en banc majority starts its double jeopardy analysis as a different point, but I agree that the same three-part test applies. See Partch v. State, 43 So. 3d 758 (Fla. 1st DCA 2010). The Court in Shelley II started, like I do here, with "same criminal offense" analysis. 176 So. 3d at 917 (quoting Valdes v. State, 3 So. 3d 1067, 1069 (Fla. 2009)).

48

communications device does not contain any elements that are distinct from the offense of traveling to meet a minor." Hamilton v. State, 163 So. 3d 1277, 1279 (Fla. 1st DCA 2015). Likewise, in Mizner v. State, 154 So. 3d 391, 399 (Fla. 2d DCA 2014), dual convictions for unlawful use and traveling to meet a minor based on the same acts were reversed because "the proof of the unlawful use of a two-way communications device was subsumed within the proof of the solicitation and traveling offenses in this case." Other recent cases have followed in this determination that violations of section 847.0135(4) (traveling after solicitation) and 934.215 (unlawful use of communications device) are not separate offenses when the same acts are involved because proof of unlawful use is subsumed within the proof of the travel. See Holt v. State, 173 So. 3d 1079 (Fla. 5th DCA 2015); Holubek v. State, 173 So. 3d 1114 (Fla. 5th DCA 2015).

Likewise, the Florida Supreme Court has found that the offenses of use of a computer service to solicit a minor or supposed minor, and traveling after such solicitation, are "the same" for purposes of double jeopardy analysis because "the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling after solicitation." Shelley II, 176 So. 3d at 919.[19] In Shelley II, the Florida

_____

[19] The en banc majority discusses Shelley II and its mention of the "same conduct." (Maj. Op. at 14). The majority equates the "same conduct" in Shelley II with a single act. But I read the "same conduct" discussed in Shelley II to mean the "same criminal episode or transaction," a separate consideration in the three-part double jeopardy analysis. See Partch, 43 So. 3d at 760. A "same criminal episode or

49

Supreme Court ruled that double jeopardy was violated by dual convictions for solicitation (section 847.0135(3)(a)) and traveling to meet the minor (section 847.0135(4)), where the conduct "constitutes both solicitation . . . and traveling after solicitation." 176 So. 3d at 919. The Florida Supreme Court held that Shelley's dual conviction violated the Blockburger test in section 775.021(4) because "the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling after solicitation." Id.

## CHARGING DISTINCT ACTS TO AVOID DOUBLE JEOPARDY

In State v. Meshell, 2 So. 3d 132 (Fla. 2009), dual convictions for lewd and lascivious battery were affirmed where the acts occurred within seconds of each other, but the information alleged different anatomical combinations. As the Florida Supreme Court in Meshell observed, "Florida courts have focused on whether the acts forming the basis of the charges are 'distinct.'" Id. at 134. "Distinct acts" are "acts of a separate character and type requiring different elements of proof." Id. at 135; see also Partch v. State, 43 So. 3d 758 (Fla. 1st DCA 2010). While the offenses described by section 847.0135(3) and section 934.15 are subsumed within the proof of the offense described by section 847.0135(4), the case law discusses violations of those statutes which are alleged to have occurred on the same day or span of days.

---

transaction" or the "same conduct" may encompass multiple single acts. I respectfully submit that the en banc majority misapplies Shelley II by reading its "same conduct" discussion to only be a single act.

50

Thus, the actions supporting the charges have been considered the same acts, committed "in the course of one criminal episode or transaction." See § 775.021(4).

For example, in Mizner, the State "charged each of the offenses over the same time period, from November 1, 2011, to November 4, 2011." 154 So. 3d at 400. The Mizner court rejected the State's argument that the multiple uses of communications devices prevented that offense from being subsumed into the single charge for travel after solicitation. Id.

In Hamilton, the cell phone uses occurred "over three to four days in May of 2012" and the last element of the travel after solicitation occurred on May 4, 2012. 163 So. 3d at 1278. Even though the acts resulting in the charges "spanned more than one day," the court in Hamilton found that the State had "**charged them** as occurring **during a single criminal episode**" and thus vacated the conviction for the violation of section 934.15. Id. (emphasis added).[20]

The actions supporting the dual charges in Holt were both alleged to have occurred "on or about March 14, 2013." 173 So. 3d at 1081. Because both the charging document and the jury verdict form lacked any clear language to show that the charges were based on two distinct acts, "the State charged the offenses as occurring during a single criminal episode, and we may not assume they were

---

[20] I believe the en banc majority has receded from Hamilton v. State, 163 So. 3d 1277, (Fla. 1st DCA 2015), on this point. I respectfully submit that we should continue to comply with our holding in Hamilton.

51

predicated on different acts." Id. at 1081; see also Partch, 43 So. 3d at 762 ("The ambiguous wording of the charging information and the jury verdict makes it impossible for this court to know if the jury convicted appellant for one act of sexual battery or two distinct acts" when the evidence at trial showed overlapping acts).[21] Similarly, in Holubek, the unlawful use of a two-way communications device and the travel to meet the "minor" arose out of the same criminal episode between "the evening of March 14, 2013, and early morning hours of March 15, 2013." 173 So. 3d at 1115. See also Meythaler v. State, 175 So. 3d 918 (Fla. 2d DCA 2015) (noting that State could have avoided the double jeopardy issue by amending the information to allege additional communications on different dates); Anderson v. State, 190 So. 3d 1120, 1121 (Fla. 1st DCA 2016) (noting that "where the State charges the defendant with multiple counts of solicitation and also charges the defendant with traveling, so long as different conduct is alleged with regard to the solicitation and traveling charges, dual convictions will not violate the defendant's double jeopardy

---

[21] The en banc majority has "clarified" the language in Partch, which the court in Holt v. State, 173 So. 3d 1079 (Fla. 5th DCA 2015), as well as other courts, applied as I do here. I think it is fairer to say that the en banc majority recedes from Partch. In Partch, we previously held that where "neither the charging information nor the jury verdict form included language clearly predicating the disputed charges on two distinct sex acts," it was "impossible for this court to know if the jury convicted appellant for one act of sexual battery or two distinct acts" when the evidence produced at trial showed overlapping acts. Partch, 43 So. 3d at 761-62. Accordingly, in Partch, the "distinct acts exception" to the double jeopardy rule did not apply and the conviction was reversed. Id. at 763-64. I would not recede from Partch and would instead apply its plain language, as other courts have done.

rights").

In Graham v. State, 170 So. 3d 141, 143 (Fla. 1st DCA 2015), *aff'd*, 207 So. 3d 135 (Fla. 2016), we affirmed a conviction over a double jeopardy challenge where "the information and the jury verdict demonstrate that the charges were predicated on two distinct acts." While we do not know what the information alleged at trial in Shelley II, we do know that the solicitations occurred "[o]ver the course of several days." 176 So. 3d at 916.

In Manetta v. State, 81 So. 3d 560, 562 (Fla. 3d DCA 2012), the court cited to Partch and found a double jeopardy violation where two counts of lewd and lascivious molestation were identical and "thus did not so much as allege separate acts which might form the basis of separate judgments. . . ." See also Gonzalez v. Jones, 14-20645-CIV, 2015 WL 5144348, at *32 (S.D. Fla. Jan. 22, 2015), *report and recommendation adopted*, 14-20645-CIV, 2015 WL 5156566 (S.D. Fla. Sept. 2, 2015) (citing to Manetta and Partch in holding that identical counts in the information alleging the "same offense" and not alleging "separate acts" resulted in a double jeopardy violation).

The unlawful use of a computer to solicit conviction was reversed in Batchelor v. State, 193 So. 3d 1054 (Fla. 2d DCA 2016), due to the possibility that the additional conviction for traveling after solicitation was based on the same acts. The State had charged that both offenses occurred on or between June 10, 2013, and June

13, 2010, but the court in <u>Batchelor</u> held that it was "not at liberty to infer" from the record that the State charged the defendant "with two distinct, chargeable offenses, separated in space or time." <u>Id.</u> at 1058. Discussing the same argument as the State makes here, the court in <u>Batchelor</u> stated:

> Finally, the State argues that it is not possible to determine whether the defendant's use of his two-way communications device was the same as his use of a computer online service or internet service without looking at the underlying facts of the case. The State is on to something here, but its analysis ignores the allegations of the charging document that it filed against Mr. Batchelor. One can imagine a scenario where convictions for both traveling to meet a minor and the unlawful use of a two-way communications device could be sustained. But such a scenario would require a charging document—unlike the one filed in this case—that distinguished the two acts as occurring separately, and that facts were adduced at trial to prove that the offenses were indeed committed as separate and distinct acts.

<u>Id.</u>

The deficiency in the charging document required reversal in <u>Stapler v. State</u>, 190 So. 3d 162 (Fla. 5th DCA 2016), as well. There, dual convictions for solicitation and travel after solicitation were challenged on double jeopardy grounds. <u>Id.</u> at 163-64. Acknowledging that sections 847.0135(3) and 847.0135(4) contain the same elements, "the only issue in this case is whether Stapler can be convicted of multiple solicitations despite being charged with single counts of solicitation and traveling based on conduct occurring over the same specified period of time." <u>Id.</u> at 164. The State in <u>Stapler</u> argued that the evidence established multiple violations sufficient to justify convictions under both sections, but the court declined "to deny a double-

54

jeopardy claim 'based on uncharged conduct simply because it could have been charged.'" Id. at 165 (quoting State v. Shelley, 134 So. 3d 1138, 1141-42 (Fla. 2d DCA 2014) (Shelley I)).

In Mahar v. State, 190 So. 3d 1123 (Fla. 2d DCA 2016), the court reversed dual convictions for solicitation and traveling after solicitation as double jeopardy. The communications occurred a day prior to travel. "Like Shelley, the State here charged Mr. Mahar with one count of solicitation based on those multiday communications and made no effort to charge the conduct in multiple, separate counts of solicitation." Id. at 1125 (citing Meythaler, 175 So. 3d at 919).

In Thomas v. State, 209 So. 3d 35, 36 (Fla. 2d DCA 2016), the defendant was charged with soliciting "on or about March 19, 2013, through March 22, 2013" and traveling to meet a minor on March 22, 2013. Citing to Shelley II, Mahar, and Meythaler, the Thomas court found a double jeopardy violation. 209 So. 3d at 36-37.

Accordingly, in order to survive a double jeopardy challenge when a conviction for travel after solicitation has been obtained, convictions for the lesser felonies of unlawful use and solicitation must be based on conduct that is not "in the course of one criminal transaction or episode," as contemplated by section 775.021(4). See Hartley v. State, 129 So. 3d 486 (Fla. 4th DCA 2014) (solicitation acts charged as separate counts for each date; travel after solicitation charged on only

55

one of the dates and sufficient solicitation occurred that date to support travel offense).[22]

## DISTINGUISHING CERTAIN CASES

The en banc majority relies on certain cases which I believe are distinguishable or have no application here.  There are cases which have held that although the information did not charge two separate acts, the proof at trial was clear that distinct acts were involved and therefore double jeopardy was not implicated.[23] In our recent case McCarter v. State, 204 So. 3d 529 (Fla. 1st DCA 2016), we found no double jeopardy violation where clearly distinct acts of solicitation were proven. In McCarter, the proof at trial of the soliciting a minor charge consisted of multiple requests via social media for nude pictures of a minor while the solicitation in the

---

[22] It is worth noting that in considering the double jeopardy clause protection against being twice put to trial for the same offense, the United States Supreme Court has looked to the charging document (the indictment in federal court) in considering whether to grant relief.  Abney v. United States, 431 U.S. 651 (1977).

[23] It would arguably be simpler to rely solely on the specific acts alleged in the information without regard to what was proven at trial.  This appears to be the approach taken by other districts.  See Honaker v. State, 199 So. 3d 1068 (Fla. 5th DCA 2016); Batchelor v. State, 193 So. 3d 1054 (Fla. 2d DCA 2016); Mizner v. State, 154 So. 3d 391, 399 (Fla. 2d DCA 2014).  But such an approach is precluded by McCarter v. State, 204 So. 3d 529 (Fla. 1st DCA 2016).  In McCarter, the proof at trial for the soliciting count consisted of multiple requests via social media for nude pictures of a minor while the solicitation in the traveling after solicitation count consisted of messages via smart phone to arrange in-person meetings with the minor. Even if we did not want to overrule McCarter en banc, it could be reconciled with the cases from the other districts by the approach I propose here to avoid conflict.

traveling after solicitation charge consisted of messages via smart phone to arrange in-person meetings for sexual activity with the minor. Id. at 530. McCarter is consistent with cases from other courts where double jeopardy was not violated so long as the evidence at trial clearly distinguished between separate offenses, as compared to this case, where the evidence did not.

In Fravel v. State, 188 So. 3d 969, 972 (Fla. 4th DCA 2016), convictions for two counts of fraudulent use of personal identification were affirmed over a double jeopardy challenge where the evidence at trial showed two different banks and therefore "clearly distinguished between two separate counts." In Nicholson v. State, 757 So. 2d 1227 (Fla. 4th DCA 2000), the convictions for two counts of throwing deadly missile were affirmed over a double jeopardy challenge based on the proof at trial of two bricks thrown into two windows. In Nicholson, "the evidence at trial clearly distinguished between the two separate offenses." Id. at 1228. In Vizcon v. State, 771 So. 2d 3, 5-6 (Fla. 3d DCA 2000), convictions for 29 counts of money laundering were affirmed over a double jeopardy challenge with a citation to Nicholson's requirement that the evidence at trial clearly distinguish separate offenses to avoid double jeopardy. If we did not want to conflict with these cases, we could still comply with the prohibition against double jeopardy by finding no violation where, unlike here, the evidence a trial "clearly distinguished" between separate acts.

57

## APPLICATION OF DOUBLE JEOPARDY TO LEE

Here, the State alleged that the unlawful use and solicitation acts in counts II and III occurred over a twelve-day span, and the travel after solicitation in count I occurred only on day thirteen, immediately following the twelve-day span. The travel after solicitation offense requires proof of prior seduction, solicitation, luring, or enticement, which culminated in the travel. § 847.0135(4)(a), Fla. Stat. (2013). In this case, none of the text messages dated January 2, 2014, the day the travel occurred, were sexually explicit and none contained content constituting seduction or solicitation. Accordingly, the "after solicitation" element of the travel offense in count I must have been based on the texts leading up to January 2, the date the final element of the offense occurred.

In this case, although the proof at trial of text messages over several days established multiple uses of Lee's cell phone to facilitate a felony and also established multiple solicitations, I believe that it is incorrect to presume that Lee was not convicted of the same act in all three counts. The information in this case did not allege distinct acts; the verdict form did not separate the acts; and the evidence presented to the jury could support, but did not require, the jury to find that the acts underlying Lee's conviction were separate. Therefore I would find that the

multiple convictions and sentences violate double jeopardy.[24]

In conclusion as to the double jeopardy issue, the convictions and sentences for unlawful use of a two-way communications device (count II) and for use of a computer service to seduce, solicit, or lure a person believed to be a child (count III) should be reversed while the conviction and sentence for traveling to meet a minor after using of computer to seduce or solicit a minor (count I) should be affirmed. See Shelley II, 176 So. 3d at 919-20 (holding that when dual convictions violate double jeopardy, the lesser offense should be reversed and the greater offense affirmed). I respectfully dissent from the en banc majority decision to the extent it affirms Lee's conviction on all three counts in spite of what I believe are double jeopardy violations.

## STATE'S DOWNWARD DEPARTURE APPEAL

At the time the panel decision issued, we were bound by our earlier decision

---

[24] The en banc majority discusses Hammel v. State, 934 So. 2d 634, 635 (Fla. 2d DCA 2006), for the contention that each break allowing a defendant to "pause, reflect, and form a new criminal intent" can be charged separately. I agree that no double jeopardy violation occurs where the information charges separate acts following temporal breaks like in Hammel. Here, however, Lee was not charged with separate acts but with overlapping acts, such that we cannot be clear that the jury did not convict him of the same act. Duke v. State, 444 So. 2d 492 (Fla. 2d DCA 1984), and the related cases discussed by the en banc majority concerning temporal breaks are consistent with State v. Meshell, 2 So. 3d 132 (Fla. 2009), where dual convictions for lewd and lascivious battery were affirmed where the acts occurred within seconds of each other, but the information alleged different anatomical combinations. No such allegations were present in the information here.

in <u>Wiley I</u> that required the State to object to a downward departure sentence after the sentence was imposed for the downward departure to be preserved for appeal. 179 So. 3d at 482. No objection was made by the State after the trial court granted Lee downward departure sentences, so the panel found that the issue was not preserved for appellate review. Subsequent to the panel decision, while this case was being considered en banc, the Florida Supreme Court issued <u>Wiley II</u> which quashed our decision in <u>Wiley I</u>. <u>Wiley II</u>, 210 So. 3d at 660. <u>Wiley II</u> holds that the State's objection to a downward departure sentence is preserved for appellate review if the State objects during the sentencing process. <u>Id.</u> Here, the State objected during the sentencing process to the trial court imposing the downward departure sentences on Lee.

I agree with the en banc majority that the trial court used a statutory mitigator without competent substantial evidence to support the mitigator and used impermissible non-statutory mitigators in granting the downward departure. I therefore agree with the decision of the en banc majority to remand for resentencing pursuant to <u>Jackson v. State</u>, 64 So. 3d 90 (Fla. 2011). However, because of the double jeopardy violation, I would vacate the sentences for counts II and III, and would have the resentencing be only as to count I.

MAKAR, J., joins.

MAKAR, J. concurring in part, dissenting in part.

I concur in Judge Bilbrey's opinion, but write separately to highlight that the double jeopardy problem in this case stems from a poorly-drawn information and the lack of jury instructions and a verdict form that assures us that the jury actually found that each violation of the traveling and solicitation counts charged against Lee was based on separate and distinct acts. Adequate adjudicative tools exist to protect against the type of double jeopardy problem presented, but they were not used in this case, making it impossible to conclude that a constitutional violation did not occur. Because a double jeopardy violation is universally deemed to fundamentally offend state and federal constitutions, we have an "unrenunciable judicial duty" to remedy such a violation even if not raised or preserved by the parties. Hendricks v. State, 34 So. 3d 819, 828 (Fla. 1st DCA 2010); Bishop v. State, 21 So. 3d 830, 832 (Fla. 1st DCA 2008).

Turning to the information, it charged Lee with three counts: (1) traveling to meet a minor to engage in sexual contact after using a computer to solicit the illegal act ("traveling");[25] (2) unlawfully using a two-way communications device (a cellphone) to facilitate commission of a felony ("communications");[26] and (3) using

---

[25] § 847.0135(4)(a), Fla. Stat. (2013).

[26] § 934.215, Fla. Stat. (2013).

61

a computer to facilitate or solicit sexual conduct with a person believed to be a child ("solicitation").[27]

On the face of the information, a potential double jeopardy problem is immediately apparent, as Lee pointed out below: the solicitation charged in Count 3 is subsumed in the traveling charge in Count 1. See State v. Shelley, 176 So. 3d 914, 919 (Fla. 2015) ("[B]ecause the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling after solicitation, the offenses are the same" for purposes of the double jeopardy test in section 775.021(4), Florida Statutes."). This problem is exacerbated because Count 3 of the information charged that Lee used a computer to engage in solicitations "on *one or more* occasions" over ten days. (Emphasis added). As charged, the jury need only find *one* solicitation to find Lee guilty as to Count 3. But to also prove the traveling violation in Count 1, an additional solicitation violation—separate and distinct from the one upon which the jury found a violation in Count 3—must be shown to avoid a double jeopardy violation. Stated differently, to uphold concurrent convictions on Counts 1 and 3 as alleged in the information against Lee, there must be a basis in the record for concluding that the jury was told and understood that it must actually find *at least two* separate and distinct solicitation violations. Absent an amended information or

---

[27] § 847.0135(3)(a), Fla. Stat. (2013).

some means of channeling their decision-making, the jury was without guidance as to whether they could use just one solicitation violation as the basis for guilt as to Counts 1 and 3; they were adrift without direction.

The information's shortcomings led Lee to ask for dismissal on double jeopardy grounds, but the trial judge summarily denied the request, finding that "each offense contains an element that the other does not," which is erroneous in light of <u>Shelley</u>. The case proceeded to trial, the jury was given only standard criminal instructions, and a basic verdict form was used asking whether Lee was guilty as to each of the three counts "as charged in the information."

Focusing, as we must, on how the jury was instructed and what it did, a glaring deficiency is obvious. At no point was the jury told it had to find at least two separate and distinct solicitation violations to hold Lee accountable on both the traveling count and the solicitation count. <u>See</u> <u>Partch v. State</u>, 43 So. 3d 758, 761-62 (Fla. 1st DCA 2010) ("[N]either the charging information nor the jury verdict form included language clearly predicating the disputed charges on two distinct sex acts."). For all we know, jury deliberations ended when they found a solicitation violation, marked "guilty" on the verdict form as to Count 3, and used that same violation to mark "guilty" as to the traveling charge in Count 1. Nothing in the information, jury instructions, or verdict form provides any objective basis for excluding this unconstitutional result; no amount of rumination or hypothesizing changes this

63

conclusion. As we said in <u>Partch</u>, the "ambiguous wording of the charging information and the jury verdict makes it impossible for this court to know if the jury convicted appellant for one act of sexual battery or two distinct acts." <u>Id.</u> at 762. The same impossibility exists here.

Even if evidence supporting multiple solicitations can be gleaned from the appellate record, the jury was empowered to find only *one* solicitation violation as charged in the information; it was not told that it had to find an additional one to avoid a double jeopardy violation as to the traveling violation. For this reason, the en banc court's conclusion that Lee's convictions on the three counts were based on "separate and distinct acts" that "were not based on the same conduct" is unverifiable and thereby speculative on this record. The State did not charge separate and distinct counts of solicitation, the jury instructions were silent on the topic, and the verdict form provides no clue as to whether the jury found separate and distinct acts of solicitation as to Counts 1 and 3. No objective basis establishes that the jury found a solicitation violation other than the one, and only one, that underlies the violation it found as to Count 3; it didn't know any better, given the problematic information and the lack of jury instructions/verdict form to guide its decision-making on this point. End result: we can't unscramble the egg in this case; Lee was denied the ability to protect against a double jeopardy violation and the State can't rule out that his constitutional right wasn't infringed.

It bears emphasis that a double jeopardy violation is an error of fundamental proportion, so much so that it can be raised on appeal for the first time even if the issue was not raised, developed, or preserved. See Lippman v. State, 633 So. 2d 1061, 1064 (Fla. 1994) ("The prohibition against double jeopardy is 'fundamental.'") (quoting Benton v. Maryland, 395 U.S. 784, 795-96 (1969) ("The fundamental nature of the guarantee against double jeopardy can hardly be doubted.")). Indeed, a potential double jeopardy violation can be addressed sua sponte on appeal. Honaker v. State, 199 So. 3d 1068, 1070 (Fla. 5th DCA 2016) (An appellate court "may sua sponte address fundamental error apparent on the face of the record" in a pro se, post-Shelley, traveling/solicitation case.). When presented with an obvious constitutional problem, our obligation is to determine whether a violation exists, even if Lee had never raised the double jeopardy issue at trial or on appeal. Hendricks, 34 So. 3d at 828 ("Despite Appellant's failure to argue fundamental error, we consider whether the purported error is of a fundamental nature because it is an appellate court's 'unrenunciable judicial duty' to correct fundamental error even if it is not raised."). That Lee agreed to the jury instructions and verdict form (or filed a motion to dismiss that was denied) is immaterial here under double jeopardy fundamental error analysis, particularly so when his attempt to raise the constitutional issue was summarily dismissed.

Here, Lee's counsel presciently pointed out the potential for a double jeopardy violation, but erroneously was denied relief at any point on the mistaken view that solicitation is not subsumed in a traveling violation. Under Shelley, that view is wrong. Because Lee established the potential for a significant double jeopardy violation that was dismissed and thereby unaddressed below, the most reasonable approach in this case is to presume such a violation unless the State can establish the contrary, much like was done in Dell'Orfano v. State, 616 So. 2d 33, 36 (Fla. 1993), which placed the burden on the State in a double jeopardy case to overcome the presumption where the subsequent prosecution is based on the same defendant, crime, time, and victim. Id. (holding that "wherever there is doubt that the State has met its burden, the trial court must find a double jeopardy bar if it also concludes that the State either was aware of or could have discovered the newly charged offenses through due diligence in the first prosecution" in a subsequent prosecution case). As in Dell'Orfano, the existence of a potential (if not obvious, in this case) double jeopardy problem justifies the State having to prove the absence of a violation. After all, Lee had no way to do so in the trial court, which dismissed his double jeopardy concerns at the outset. Whether or not he was entitled to dismissal pre-trial doesn't matter because he was entitled to have his double jeopardy claim

addressed at some point,[28] which did not occur. Lee thereby has met his burden of demonstrating error of constitutional significance, shifting the burden to State to demonstrate no double jeopardy violation occurred.

In this regard, our review in this case is not one of *evidentiary sufficiency* as to whether five solicitations could have been established at trial; if the State had charged five counts of only solicitation (without a traveling charge), it is likely this record would support upholding convictions on those five counts. But that is not what this case is about. Instead, it is about *constitutional sufficiency*, that being whether the charges in the information and the jury instructions/verdict form give us any basis to conclude that the double jeopardy violation about which Lee complained does not exist. Because that can't be done on this record, vacation of the solicitation count is the appropriate remedy under these unique circumstances post-Shelley.

---

[28] See State v. Sholl, 18 So. 3d 1158 (Fla. 1st DCA 2009) (finding "[w]hen an information contains two or more charges which amount to the same offense, '[d]ouble jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning'") (citation omitted). Sholl doesn't mean trial judges must put their heads in the sand from the start until the end of trial, ignoring obvious double jeopardy problems raised pre-trial in a motion to dismiss or otherwise. Preventing a multi-vehicle pileup is far better than disentangling its wreckage. In addition, a motion to dismiss in this context is a well-accepted practice, so much so that the State views it as necessary to preserve a double jeopardy issue, see, e.g, Fravel v. State, 188 So. 3d 969, 971 (Fla. 4th DCA 2016); it is not an "improper" motion to be ignored. After Shelley, trial judges should consider such motions as invitations to avoid constitutional error, not as "improper" ones to be automatically denied.

As a final note, the double jeopardy problem in this case has straightforward solutions that impose no significant burden on the State, which has tremendous strategic leeway in deciding which charges to assert in this class of cases. One is for an information to set forth charges in a way that lessens or avoids a potential double jeopardy violation; we don't want a jury that finds only one solicitation to convict a defendant of two crimes because an information is unclear. The Legislature has given the State much authority as to the types of crimes charged in this case, specifically saying that multiple counts of solicitation are permissible.[29] Carefully crafted counts—that don't overlap in violation of Shelley—are workable in most, if not all, cases. Indeed, this approach was suggested in McCarthy v. State, 193 So. 3d 1059, 1059 (Fla. 1st DCA 2016), which involved a double jeopardy violation arising from "a single count of unlawful use of a computer service and a single count of traveling to meet a minor; both of these charges were based on the same conduct." In a footnote, the panel said:

> We note that the outcome of this case would have been different if the State had charged McCarthy with multiple counts of solicitation and traveling based on different conduct. *See Meythaler v. State,* 175 So. 3d 918, 919 (Fla. 2d DCA 2015) (vacating conviction and sentence for solicitation where information alleged only single counts of solicitation and traveling based on the same conduct, but noting that if the State had

---

[29] § 847.0135(3)(b), Fla. Stat. ("Each separate use of a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission wherein an offense described in this section is committed may be charged as a separate offense.").

> amended the information to allege additional communications that occurred, these counts would have survived).

Id. at 1059, n.1. By extension, the outcome of Lee's case would have been different had the State charged Lee "with multiple counts of solicitation and traveling based on different conduct." Id. Charging one count each of traveling and solicitation, without specifying they're based on different conduct, is a recipe for double jeopardy disaster.

The other solution is to use a jury instruction and/or verdict form that tells jurors they need to find separate and distinct acts of solicitation to support both a traveling violation and a solicitation violation.[30] A jury instruction saying that "a conviction on a traveling count cannot be based on the same act of solicitation used to convict the defendant on the solicitation count" or the like would guard against a constitutional violation, even if one or multiple counts of solicitation are alleged. Here, neither the information, the jury instructions, nor the verdict form constrained the jurors from wading into an insoluble double jeopardy problem, which appeared on the face of the information and thereafter was not addressed.

---

[30] This recommendation was made years ago in Judge Cowart's concurrence in Barnhill v. State, 471 So. 2d 160, 162 (Fla. 5th DCA 1985), where he said: "Often violations of double jeopardy are discernible as a matter of law, but when the issue of double jeopardy turns on a factual issue, as in this case, appropriate jury instructions and verdicts should be given the jury to permit it to make the necessary factual distinctions to effectuate the double jeopardy constitutional prohibition."

* * *

Double jeopardy jurisprudence is among the most confusing and complex,[31] generating challenging conundrums and resulting often in widely divergent court decisions analyzing similar issues; this phenomenon continues post-Shelley, as Florida courts navigate new and confounding questions. That said, this case presents the simple question of whether Lee, having brought a meritorious double jeopardy problem to the trial court's attention, is entitled to relief when our review of the record cannot possibly exclude the precise violation about which he complained. Because we are in the business of protecting constitutional rights, for even those who commit repugnant acts, the question answers itself.

---

[31] Albernaz v. United States, 450 U.S. 333, 343 (1981) ("[T]he decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator."). Bounded by four different ocean currents that form a massive clockwise-circulating sea vortex, the Sargasso Sea is a unique region in the North Atlantic Ocean known for its seaweed and clear blue water, depicted "in literature and media as an area of mystery," most notably in Jules Verne's 20,000 Leagues Under the Sea. See Sargasso Sea, Wikipedia, https://en.wikipedia.org/wiki/Sargasso_Sea/ (last visited April 27, 2017).